**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| THOMAS M. THOMPSON,<br><br>        Plaintiff,<br><br>vs.<br><br>MEDTRONIC, INC., MEDTRONIC MINI MED, INC., STEVE BAXTER, DOES I through X, and ROE CORPORATIONS I through V inclusive,<br><br>        Defendants. | 2:06-CV-00675-RCJ (PAL)<br><br>**O R D E R** |

Before the Court for consideration is Plaintiff's Motion to Remand. The Court has considered the motion, the pleadings on file, and oral arguments on behalf of all parties. It is hereby ordered that the Plaintiff's Motion to Remand (# 7) is *denied* without prejudice.

**BACKGROUND**

On April 20, 2006, Plaintiff Thomas M. Thompson ("Thompson") filed the present lawsuit in state court against Medtronic, Inc. ("Medtronic"), Medtronic Mini Med, Inc. ("Mini Med"), Steve Baxter ("Baxter"), and numerous Doe and Roe Defendants. The complaint asserted causes of action for negligence, strict product liability, breach of warranty, and failure to warn. These claims are based on injuries suffered by Plaintiff after he used allegedly defective Quick-set Plus diabetes infusion sets designed, manufactured, sold, and/or delivered by Defendants.

Defendants Medtronic, Mini Med, and Baxter filed a motion (# 1) on June 2, 2006, to remove the action to federal court despite lacking complete diversity of parties. Defendants' motion to remove alleges that Plaintiff (a Nevada resident) fraudulently joined Baxter (a Nevada resident) as a Defendant for the sole purpose of defeating this Court's diversity jurisdiction over the matter. On June 15, 2006, Plaintiff filed the instant motion (# 7) to remand this action to state court because he asserts that he legitimately joined Baxter as a Defendant.

Plaintiff's physician recommended that Plaintiff purchase an insulin pump and referred Plaintiff to Baxter. Baxter was employed by Mini Med in the capacity of a therapy consultant. Prior to October 2003, Baxter sold Plaintiff the insulin pump in use at the time of Plaintiff's injuries. The insulin pump required the use of disposable tubing (infusion sets) that connected the pump to a needle inserted into Plaintiff's body. Baxter provided Plaintiff with an 800-number to the infusion set manufacturer (Mini Med), and Plaintiff used that number to call Mini Med whenever he needed to purchase additional infusion sets. From October 2003 to March 2004, Baxter was on disability leave from his position with Mini Med. During Baxter's disability leave, Mini Med directly notified Plaintiff of the new Quick-set Plus infusion sets available for purchase. Plaintiff purchased and used the Quick-set Plus infusion sets. Mini Med stopped selling the Quick-set Plus devices before Baxter returned from disability leave. After Plaintiff was hospitalized on May 14, 2004, for the injuries complained of and allegedly caused by the defective Quick-set Plus infusion sets, Baxter brought a box of the older infusion sets (not the Quick-set Plus infusion sets) to the hospital on May 15, 2004, for Plaintiff's use.

**DISCUSSION**

**I. Standard of Review**

Any civil action may be removed to federal district court so long as original jurisdiction would lie in the court to which the case is removed. 28 U.S.C. § 1441 (2006). Jurisdiction founded on 28 U.S.C. § 1332 requires that the parties be in complete diversity and the amount in controversy exceed $75,000. The removal statute is to be strictly construed against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Where doubt regarding the right to removal exists, the federal court should remand the case to state court. *Id.*

Nevertheless, "fraudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). The joinder of non-diverse defendants is fraudulent when "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

Where fraudulent joinder is at issue, "[t]he defendant seeking removal to federal court is entitled to present the facts showing the joinder to be fraudulent." *Id.* Thus, in deciding fraudulent joinder claims, the Court may "pierce the pleadings" and consider "summary judgment-type evidence such as affidavits and deposition testimony." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (citing *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995)). In other words, "a defendant must have the opportunity to show that the individuals joined in the action cannot be liable on any theory." *Ritchey*, 139 F.3d at 1318.

## II.   Joinder of Sales Representative

Plaintiff alleged four specific causes of action in his complaint against all Defendants: (1) negligence, (2) strict product liability (design and manufacture defects), (3) breach of implied warranty of merchantability, and (4) failure to warn.  Plaintiff also alleges that his heart attack, kidney failure, and permanent kidney damage occurred as a "direct and proximate result" of Defendants' actions.

The issue upon which Plaintiff's motion to remand turns is whether Plaintiff asserts valid claims under Nevada law against Baxter in his capacity as a sales representative for Mini Med.  This Court must grant the remand motion if "there is any doubt as to the right of removal."  *See, e.g., Gaus*, 980 F.2d at 566.

Nevada law creates potential liability for sellers of products under warranty and strict liability theories.  Nev. Rev. Stat. § 104.2313-2315 (2005).  For the purposes of strict liability, Nevada defines "seller" as "a person who sells or contracts to sell goods."  Nev. Rev. Stat. § 104.2103 (2005).  Even distributors must be determined to be "seller[s] of products" in order for liability to attach when they distribute products.  *Allison v. Merck and Co.*, 110 Nev. 763, 767 (1994).  In *Allison*, an infant suffered injuries after receiving a measles, mumps, and rubella (MMR) vaccine shot from Clark County Health Services.  The *Allison* court held that, because the county defendant had not sold the allegedly harmful vaccine, it could not be liable for any potential harm caused by the vaccine.  *Id.*  Therefore, only individuals who sell or contract to sell products may be held liable for subsequent injuries caused by products.

However, Nevada case law does not specifically address whether a sales representative for a manufacturer may be a "seller" for the purpose of strict product liability. *Moore v. Medtronic, Inc., et al.*, 2006 U.S. Dist. LEXIS 44198, Case No. 2:05-CV-1329, Order (D. Nev., June 26, 2006) (J. Dawson).  In *Moore*, the defendants removed the action claiming fraudulent joinder of a sales representative (Petroni), and the plaintiff filed a motion to remand.  The plaintiff needed a catheter inserted, and the plaintiff's physician ordered a catheter from the manufacturer (Medtronic).  The allegedly defective product was obtained from the sales representative's office but he did not handle the purchase order or invoice for the sale.  The court granted the plaintiff's motion to remand because the issue of strict product liability for sales representatives was not settled in Nevada and there was a "lack of evidence regarding Defendant Petroni's status vis-a-vis the manufacturer." *Id.* at *7.

A "sufficient causal nexus" must exist between the plaintiff's claims and the allegedly wrongful conduct of the sales representative. *Baker v. Merck & Company, Inc.*, Case No. CV-S-05-0625, Order (D. Nev., September 12, 2005) (J. Jones).  In *Baker*, the plaintiffs (Nevada residents) sued sales representatives (Nevada residents) who promoted the allegedly injurious product (Vioxx) in Nevada.  However, two of the six plaintiffs in *Baker* did not receive their Vioxx prescriptions from Nevada doctors.  Based on these facts, the Court found that the claims stated against the sales representative defendants were "not colorable due to the absence of a sufficient causal nexus between these plaintiffs' claims on the complaint and the 'complained-of' conduct of the sales representatives." *Id.*  Thus, sales representatives cannot be liable simply because they are sales representatives; their actions must create an adequate causal link to the plaintiff's claims.

The Court cannot consider Baxter a "seller of products" because Plaintiff purchased the allegedly defective products directly from Mini Med. Baxter's role in setting up a "course of sales" does not expose him to liability because he merely gave Plaintiff Mini Med's 800-number for Plaintiff to order more infusion sets as needed. Additionally, Baxter was on disability leave during the entire time that the Quick-set Plus infusion sets were commercially available. Under *Baker*, no "causal nexus" exists between Baxter and Plaintiff because Baxter did not take part in the design, manufacture, marketing, promotion, sale or distribution of the Quick-set Plus infusion sets.

Therefore, because Baxter did not sell, contract to sell, or distribute the Quick-set Plus infusion sets, he cannot be liable under warranty or strict product liability theories. Additionally, the lack of a "sufficient causal nexus" between Baxter's actions and Plaintiff's claims precludes the claim for failure to warn. Plaintiff has no colorable claim against Baxter.

**III.    Plaintiff's Causes of Action Against Baxter**

*A. Negligence*

In Nevada, claims for negligence must be based on an existing duty of care, breach, legal causation, and damages. *See Jordan v. State ex rel. Dept. of Motor Vehicles and Public Safety*, 110 P.3d 30 (Nev. 2005). Plaintiff alleged that Baxter "negligently and carelessly sold" Plaintiff defective infusion sets because he "designed and set up the supply line" for Plaintiff to acquire the allegedly defective infusion sets. However, Baxter did not sell the allegedly defective product or set up the supply line; he simply gave Plaintiff Mini Med's 800-number. Additionally, the Quick-set Plus infusion sets were not marketed at the time

Baxter gave Plaintiff the 800-number.  Therefore, Baxter is not liable under a negligence theory because his actions or omissions had no causal relation to Plaintiff's injuries.

*B. Strict Product Liability*

Nevada enforces the "doctrine of strict liability for [injuries] caused by a defective product . . . even though the supplier has exercised all possible care in the preparation and sale of his product."  *General Electric Co. v. Bush*, 88 Nev. 360, 365 (1972).  Sellers and distributors of products may also be liable in Nevada under a strict liability theory.  *Jeep Corp. v. Murray*, 101 Nev. 640 (1985); *Allison*, 110 Nev. at 768.  However, the distributor must be a "seller of products" to be liable under a strict liability theory.  *Id.* at 766.

Baxter cannot be liable under *Allison* because he had nothing to do with the design, manufacture, marketing, promotion, sale, or distribution of the allegedly defective Quick-set Plus infusion sets.  Because Baxter was on disability leave during the entire time that Mini Med marketed the Quick-set Plus infusions sets, he cannot be considered a "seller" of that product.  Plaintiff's admitted that he called and purchased the infusion sets directly from Mini Med and not from Baxter.  Therefore, Baxter cannot be held strictly liable as a seller of the infusion sets.

*C. Breach of Warranty and Failure to Warn*

Warranty claims in Nevada fail when the defendant is not a "seller of products."  *Allison*, 110 Nev. at 766.  In Nevada, no one  "is liable upon a contract except those who are parties to it."  *Clark County v. Bonanza No. 1*, 615 P.2d 939, 943 (Nev. 1980).  Additionally, individual employees in Nevada cannot be liable for the corporation's obligations unless they

Page 7 of  8

agreed to be personally liable for those obligations. *Hobson v. Bradley & Drendel, Ltd.*, 98 Nev. 505 (1982).

Under *Allison*, Baxter cannot be liable under a warranty claim because he did not distribute or sell the allegedly defective infusion sets to Plaintiff. *Allison*, 110 Nev. at 766. Additionally, Baxter cannot be liable because he did not agree to be personally liable for Mini Med's new Quick-set Plus infusion sets. Therefore, Plaintiff's warranty and failure to warn claims fail.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's claims against Baxter are without merit. Therefore, Plaintiff's fraudulent joinder of Baxter does not defeat this Court's jurisdiction over the current action. IT IS HEREBY ORDERED that the Plaintiff's Motion to Remand (# 7) is *denied* without prejudice.

DATED this 7th day of December, 2006.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE